**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| MAURICE THOMAS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CASE NO. 11 C 4927 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| DAVE REDNOUR, Warden, | ) | |
| Menard Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Maurice Thomas is currently incarcerated at Menard Correctional Center in Menard, Illinois. Dave Rednour,[1] the warden of the facility, has custody of Petitioner. Thomas has filed a *pro se* writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, Petitioner's petition for a writ of habeas corpus [1] is respectfully denied.

**I.      Background**

**A.      Factual Background**

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). Therefore, the Court adopts the following accounts from the Illinois Appellate Court's Order in *People of the State of Illinois v. Thomas*, No. 1-04-2044 (Ill. App. 1st Dist. 2006).

---

[1]   Dave Rednour has replaced Donald Gaetz as the warden of Menard Correctional Center and should be substituted as Respondent. See Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts; Fed. R. Civ. P. 25(d); *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004) (citing *Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir. 1996)); *Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005).

On September 15, 1998, Shaun Garrett and Eugene Elem were involved in a game of dice with money in their hands on South Homan in Chicago. Petitioner Maurice Thomas and Marcell Stokes approached Garrett and Elem with drawn guns and robbed them of their money. Petitioner and Garrett exchanged words, and Petitioner shot Garrett. As Garrett ran away, Petitioner and Stokes shot at him. Garrett ran to a house at 1517 South Homan in Chicago. By the time the paramedics arrived at the home, Garrett was dead. Garrett died as a result of three gunshot wounds to the neck, the left buttock, and the back. Petitioner and Stokes were jointly indicted for first degree murder and attempt armed robbery of Shaun Garrett. Their trials were severed, and Petitioner was tried by a jury.

During the jury selection, the trial judge divided the venire into two large groups. The first large group consisted of the following 20 people: Francis, Staple, Urbina, Guzman, Banez, Shannon, Woo, Friberg, Katz, Farmer, Bickham, Olsen, Nero, Kaufman, Giannini, Westfall, Santos, Banez, Ringa, and Fadika. The trial judge posed questions to the entire group, and specifically engaged in a dialogue with Staple and Katz.

With respect to Ms. Staple, the trial judge specifically asked "[h]ave you or any member of your family or very close friend been victim of a crime." Venire members Brickham, Farmer, Friberg, Staple, Nero, Katz, and Fadika responded affirmatively to the trial judge's question. The following colloquy took place between the trial judge and Ms. Staple:

> Ms. Staple: My brother was killed by, he was the victim, he was killed.
> The Court: How long ago?
> Ms. Staple: About 16 years ago.
> The Court: Were you witness to this at all?
> Ms. Staple: They tried to rob him and killed him.
> The Court: Were you witness to this at all?
> Ms. Staple: No, I wasn't a witness, but they did get somebody, I had to go to the police station for it.
> The Court: Did you come to court and testify and —
> Ms. Staple: No, I didn't have to come.

> The Court: Would that affect your ability to be fair and impartial in this case at all?
> Ms. Staple: I don't know. I don't know. It might. I think so.
> The Court: Would you be able to put those feelings aside and judge the guilt or innocence of this defendant based on the evidence here?
> Ms. Staple: I think I can do that.

Next, the trial court asked the venire members questions in panels of four. The trial judge first questioned venire members Francis, Staple, Urbina, and Guzman. During the trial judge's questioning, Ms. Staple stated the following: (1) she did not have any bias or prejudice against a person simply because they are charged with a crime; (2) there is nothing about this type of case that would prevent her from being fair and impartial; and (3) she understood that the defendant is presumed innocent, he does not have to offer any evidence in his own behalf, and he must be proven guilty beyond a reasonable doubt by the State; (4) she would not hold it against the defendant if he decides not to testify; (5) she would give the same weight to a police officer's testimony and a[n] ordinary citizen's testimony; (6) she would not at all hesitate in returning a verdict of guilty if the State proves the defendant guilty beyond a reasonable doubt; (7) she would not at all hesitate in returning a verdict of not guilty if the State fails to prove the defendant guilty beyond a reasonable doubt; and (8) she would follow the law as the trial judge states it to be in the instructions, regardless of what she personally thinks the law should be.

The trial judge also gave the attorneys an opportunity to question the venire members. Thomas' counsel questioned Ms. Staple about the murder of her brother, in which the following colloquy took place:

> Q. Is there anything about that tragedy that happened in your family that you were victimized, is there anything about that that would carry over here if you sat in the —as juror in this case?
> A. I'm not sure. I'm really not sure. Because I didn't know what the case was about. So I'm not sure.
> Q. You heard the judge earlier when he read the charges against Maurice. The murder and attempt armed robbery charges?

A. Yes.

Q. Those are similar to what actually happened to your brother, is that right?

A. Yes, exactly.

Q. Is that going to make it difficult for you to sit on this trial as a juror in this case?

A. I think it will, I think it will make it very difficult for me.

The trial judge also questioned Ms. Katz. When the trial judge asked "[h]ave you or any member of your family or very close friend been victim of a crime," the following colloquy took place between the trial judge and Ms. Katz:

> Ms. Katz: Judy Katz. My house was broken into and there was a robbery involved with breaking into the house.
> The Court: How long ago was that, ma'am?
> Ms. Katz: Probably about 29, 30 years ago.
> The Court: Was anybody arrested on that, ma'am?
> Ms. Katz: No.
> The Court: Would that experience affect your ability to be fair and impartial in this case?
> Ms. Katz: I don't think so.

Next, the trial judge asked the venire members whether "any of you have any close friends or relatives who are policemen or lawyers or judges." Venire members Urbina, Katz, Kaufman, Nero, Bickham, Giannini, Westfall, and Fadika responded affirmatively. The following dialogue occurred between the trial judge and Ms. Katz:

> Ms. Katz: * * * I have several nieces and nephews who are lawyers.
> The Court: Do you know if they practice criminal law or civil law?
> Ms. Katz: I don't think either of them practice that. Civil law.
> The Court: They practice civil law?
> Ms. Katz: Yeah.
> The Court: Would that relationship with your relatives * * * affect your ability to be fair and impartial in this case at all?
> Ms. Katz: I don't think so.

The trial judge also posed questions to the venire members in panels of four, in which Katz, Farmer, Bickham, and Olsen were in one panel. During the questioning, Ms. Katz stated the following: (1) she did not have any bias or prejudice against a person simply because they are

charged with a crime; (2) there is nothing about this type of case that would prevent her from being fair and impartial; (3) she understood that the defendant is presumed innocent, he does not have to offer any evidence on his own behalf, and he must be proven guilty beyond a reasonable doubt by the State; and (4) she would not hold it against the defendant if he decides not to testify. When the trial judge asked "[w]ould you give more or less weight to the testimony of a police officer than that of an ordinary citizen?", Ms. Katz responded as follows:

> A. Yeah I would?
> Q. You would?
> A. Yeah.
> Q. Would you be able to put those feelings aside and judge the testimony of, the same as any other testimony if a policeman should testify?
> A. I'm not sure.
> Q. Would you be able to follow the law as I give it to you?
> A. Uh-huh.
> Q. If I told you that that wasn't the law, the law indicated that you would have to judge the testimony of a police officer same as anybody else, would you be able to do that?
> A. I'd try.

The trial judge continued questioning the panel of four to which Ms. Katz responded as follows: (1) she would not at all hesitate in returning a verdict of guilty if the State proves the defendant guilty beyond a reasonable doubt; (2) she would not at all hesitate in returning a verdict of not guilty if the State fails to prove the defendant guilty beyond a reasonable doubt; and (3) she would follow the law as the trial judge states it to be in the instructions, regardless of what she personally thinks the law should be.

Following questioning, defense counsel requested that the trial judge remove Ms. Staple for cause because the murder of her brother was similar to the present case and because she stated it would be difficult for her to sit on the jury. The State argued that the trial judge rehabilitated Ms. Staple because she stated that she would follow the law and the trial judge's instructions. The trial court denied the motion to strike Ms. Staple for cause.

Defense counsel also moved to dismiss Ms. Katz for cause because she stated that she would give more weight to a police officer's testimony. Defense counsel argued that Ms. Katz did not unequivocally state that she would follow the law as instructed by the trial judge. The State argued that the trial judge rehabilitated Ms. Katz because she stated that she would follow the trial judge's instructions. The trial court denied the motion to strike Ms. Katz for cause.

The trial court continued the voir dire by selecting a second large group of individuals to question. At the conclusion of voir dire, the following individuals were selected to sit on Thomas' jury: Staple, Urbina, Guzman, Banez, Katz, Ringa, Fromella, Nielsen, Davis, Young, Joshua Louis, Pranuse, Kot, and Bahlquist.

On May 4, 2004, the case proceeded to trial. At trial, the State presented the following witnesses: (1) Connie Garrett, mother of the decedent; (2) Nicole McDuffie; (3) Dr. Kendall Crowns, assistant medical examiner at the Cook County Medical Examiner's Office; (4) Mary Parks, a paramedic with the Chicago Fire Department; (5) Latoya Rice; (6) Officer Joseph Bemynista, a forensic investigator with the Chicago Police Department; (7) Tonya Brubaker, a forensic scientist with the Illinois State Police; (8) Ralph Vucko, an investigator with the Cook County State's Attorney's Office; (9) Sergeant Dominic Rizzi, A Chicago Police Officer; (10) Eugene Elem; and (11) Assistant State's Attorney Stuart Sergeant. The State also published Thomas' incriminating statement to police, and the parties entered into several stipulations. On March 8, 2004, the jury found Petitioner Thomas guilty of first degree murder and attempted armed robbery, and on April 26, 2004, the trial court sentenced him to thirty-six years in prison.

## B.    Procedural History

Petitioner appealed his state court conviction, raising one claim: that he received ineffective assistance of counsel because his attorney failed to use peremptory challenges to excuse two jurors whom the trial court refused to strike for cause.  On November 2, 2006, the state appellate court affirmed his conviction.  In its opinion, the court articulated the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and found no deficient performance, reasoning that Petitioner had not provided anything to rebut the presumption of sound trial strategy.  The court further found that Petitioner could not demonstrate prejudice because: (1) the jurors established they would view the case objectively; and (2) the evidence, including eyewitness testimony and a confession, proved Petitioner guilty beyond a reasonable doubt. Petitioner filed a petition for leave to appeal (PLA) in the Illinois Supreme Court, raising one claim: that the appellate court improperly applied Strickland, because the failure to strike a biased juror is structural error.  On January 24, 2007, the Illinois Supreme Court denied the PLA.

On July 25, 2007, Petitioner mailed a post-conviction petition, which was filed on August 20, 2007, and which the trial court dismissed on October 26, 2007.  Petitioner appealed, raising two claims:  (a) the trial court failed to rule on Petitioner's claims that trial counsel was ineffective for failing to file a motion to quash the arrest and that appellate counsel was ineffective for failing to raise that issue on direct appeal; and (b) the $105 penalty assessed against Petitioner violated his rights to due process and equal protection.  On March 25, 2010, the state appellate court affirmed.  The court ruled that the trial court had addressed all the issues, finding that (1) the ineffective assistance of trial counsel for failure to file a motion to quash arrest was forfeited because it was not raised on direct appeal, and (2) that the ineffective assistance of appellate counsel claims lacked merit because the underlying claims were meritless.

The court further found that the ineffective assistance claim regarding the motion to quash lacked merit because any such motion would not have led to the suppression of his confession. Finally, the court concluded that the $105 penalty was constitutional. Petitioner filed a PLA, raising one claim: that the statute under which the $105 penalty was assessed was unconstitutional. On May 25, 2011, the Illinois Supreme Court denied the PLA.

On July 21, 2011, Petitioner filed this 28 U.S.C. § 2254 petition, raising three claims: (a) Petitioner was denied his right to an impartial jury by the trial court's refusal to strike two biased jurors for cause; (b) Petitioner was denied effective assistance of trial counsel because counsel (1) failed to exercise peremptory challenges on biased jurors; (2) failed to investigate Petitioner's mental condition; and (3) failed to quash arrest and "raise legal issues distinct from suppression of pretrial statements"; and (c) Petitioner was denied effective assistance of appellate counsel because counsel on direct appeal (1) failed to raise ineffective assistance of trial counsel for failing to raise allegations available from the trial court record, including failure to raise Petitioner's mental state and failure to quash the arrest; (2) failed to raise the trial court's error in failing to strike two biased jurors for cause; and (3) failed to argue that Petitioner's confession should have been suppressed as fruit of Petitioner's unlawful arrest.

Petitioner has exhausted his habeas claims in that no further state court remedies remain available by which Petitioner may present them. See 28 U.S.C. § 2254(c). The petition is timely.

## II.    Analysis

Respondent maintains that the following claims are procedurally defaulted because Petitioner failed to raise them through one complete round of Illinois' appellate review process: (1) that Petitioner was denied his right to an impartial jury by the trial court's refusal to strike two biased jurors for cause; (2) that Petitioner was denied effective assistance of trial counsel

because counsel (a) failed to investigate Petitioner's mental condition; and (b) failed to quash arrest and "raise legal issues distinct from suppression of pretrial statements"; and (3) that Petitioner was denied effective assistance of appellate counsel because counsel on direct appeal (a) failed to raise ineffective assistance of trial counsel for failing to raise allegations available from the trial court record, including failure to raise Petitioner's mental state and failure to quash the arrest; (b) failed to raise the trial court's error in failing to strike two biased jurors for cause; and (c) failed to argue that Petitioner's confession should have been suppressed as fruit of Petitioner's unlawful arrest. Respondent does not argue that Petitioner's final claim— (4) that Petitioner was denied effective assistance of trial counsel because counsel failed to exercise peremptory challenges on biased jurors—is procedurally defaulted. Instead, Respondent maintains that the state court reasonably rejected Petitioner's sole-preserved ineffective assistance of counsel allegation.

### A. Procedural Default – Claims One, Two, and Three

The procedural default doctrine, also grounded in principles of comity, federalism, and judicial efficiency, ordinarily precludes a federal court from reaching the merits of a habeas claim when either (1) the claim that was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state law grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *Id.*; see also *Coleman*, 501 U.S. at 735; *Harris v. Reed*, 489 U.S. 255, 263 & n. 9 (1989); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004). Thus, when a habeas petitioner has "exhausted his state court remedies without properly asserting his federal claim at each level of the state court review" – and the opportunity to raise that claim in state court has passed – the petitioner has procedurally defaulted that claim. *Lewis*, 390 F.3d at 1026.

Similarly, procedural default on independent and adequate state grounds occurs where the state court explicitly invoked a state procedural bar rule as a separate basis for its decision to deny the petitioner relief, even if a state court reaches the merits of the petitioner's challenge to his or her conviction in an alternative holding. See *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005) ("When the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed.").

Petitioner failed to raise his first claim—that he was denied his right to an impartial jury by the trial court's refusal to strike two biased jurors for cause—to the state appellate court or the Illinois Supreme Court in either his direct appeal or in post-conviction proceedings. With respect to his second claim, Petitioner failed to raise his allegation of ineffective assistance of trial counsel for failure to investigate his mental condition to the state appellate court or the Illinois Supreme Court in either his direct appeal or post-conviction proceedings. He did raise his allegation of ineffective assistance of trial counsel for failing to file a motion to quash arrest and "raise legal issues distinct from suppression of pretrial statements" to the state appellate court on post-conviction proceedings; however, he abandoned it in the ensuing PLA in the Illinois Supreme Court. Finally, in regard to his third claim, Petitioner raised the ineffective assistance of direct appeal counsel for failing to raise the issue of trial counsel's ineffectiveness for failing to file a motion to quash the arrest in the state appellate court during post-conviction proceedings, but he abandoned it in the ensuing PLA in the Illinois Supreme Court. Petitioner did not raise the remaining ineffective assistance of appellate counsel allegations to the state appellate court or the Illinois Supreme Court, in either his direct appeal or post-conviction proceedings.

In his reply (entitled "Traverse"), Petitioner contends that his claims were not procedurally defaulted because the substance of some of those claims—particularly his claims that he was denied the right to an impartial jury by trial court's refusal to strike two jurors for cause and that appellate counsel was ineffective for failing to raise the issue on direct appeal that the trial court erred in failing to strike two jurors for cause—was fairly presented to the state courts. However, Petitioner's claims in his appeals and his claims in the habeas petition are based on fundamentally different *arguments*, despite being based on some of the same operative *facts*. As the Seventh Circuit has explained, a petitioner only fairly presents his federal claims to state courts "when he articulates both the operate facts and the controlling legal principles on which his claim is based." *Perruquet v. Briley*, 390 F.3d 505, 519 (7th Cir. 2004). In order to save this claim from procedural default, Petitioner would have had to, "in some manner, alert the state courts to the federal underpinnings of his claim." *Id*. Here, however, the "federal underpinnings" of this claim – *i.e.*, that the trial court erred in not striking the jurors for cause – were not clearly articulated to the state courts. Instead, he framed this issue as one of ineffective assistance of counsel, a different legal issue than whether the trial court erred in denying the strike for cause.

In *Wilks v. Israel*, 627 F.2d 32 (7th Cir. 1980), the Seventh Circuit noted that

> only when the federal constitutional claim has been 'fairly presented' to the state court is the exhaustion requirement satisfied as to that claim. The fact that all of the facts upon which the petitioner relies were presented to the state courts is insufficient to establish exhaustion. A difference in legal theory between that urged in state courts and in a petition for writ of habeas corpus precludes exhaustion. However, mere variations in the same claim rather than a different legal theory will not preclude exhaustion (internal citations omitted).

*Id.* at 38. The "federal concerns of comity are satisfied if the State was given a fair opportunity to address the federal constitutional issue" (*Toney v. Franzen*, 687 F.2d 1016, 1021 (7th Cir.

1982)) – not if it had the chance to address *any* federal constitutional issue.  See also *Chambers v. McCaughtry*, 264 F.3d 732 (7th Cir. 2001) (finding that a habeas petitioner had not presented a claim at all levels for review because although he had "challenged the same jury instruction in each level of appellate review, the gravamen of the unfairness about which he complains has changed"); *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 2000) (holding that a habeas petitioner had procedurally defaulted on a claim when he asserted in federal court that he was denied the effective assistance of counsel because his trial attorney did not call one witness, but had asserted in state court that he was denied effective assistance of counsel because his trial attorney did not call *other* potential witnesses).  Despite the presence of certain salient facts at all levels, Petitioner did not present the specific arguments advanced here at the state level, so the state courts were not given an opportunity to pass on the issue of whether the trial court erred in failing to strike Jurors Katz and Staple for cause.

In sum, Petitioner raised an ineffective assistance of trial counsel allegation—that his counsel was ineffective for failing to exercise peremptory challenges on biased jurors—in one complete round, but that claim was insufficient to preserve the other ineffective assistance allegations or present their operative facts to the state courts.  See *Pole v. Randolph*, 570 F.3d 922, 935 (7th Cir. 2009) (finding that "if petitioner fails to assert in the state courts a particular factual basis for the claim of ineffective assistance, that particular factual basis may be considered defaulted"); *Stevens v. McBride*, 489 F.3d 883, 893-94 (7th Cir. 2007) ("the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to procedural default").  Because Petitioner previously framed the issue as one of ineffective assistance of counsel, but now claims error by the trial court, he has not fairly presented this

claim to the state courts and this Court may not consider the new legal theory presented in his habeas petition.

Petitioner can excuse his procedural defaults only if he can establish one of two limited exceptions:  (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice. See *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Steward v. Gilmore*, 80 F.3d 1205, 1211-12 (7th Cir. 1996).  In this case, Petitioner has not claimed that he has satisfied either exception, and so those arguments are forfeited. See *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) (because habeas petitioner did not try to excuse his default, court "cannot consider his claim"); *Easley v. Hinsley*, 305 F.Supp.2d 867, 880 (N.D. Ill. 2004) (because petitioner "offers no explanation" for his default, "this court cannot consider this claim on collateral review"). Moreover, while constitutionally ineffective assistance of trial and appellate counsel may sometimes constitute cause, that issue must itself be raised as a separate claim through one complete round of state court review and can itself be defaulted, as here. See *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000).  Petitioner raised the issue of appellate counsel's ineffectiveness for not arguing trial counsel's ineffectiveness for failing to quash his arrest in the state appellate court during post-conviction proceedings, but abandoned it in the ensuing PLA.  He never raised in state court a claim that any counsel was ineffective for failing to argue his other defaulted claims.  Therefore, ineffective assistance cannot excuse his default of those issues. See *Edwards*, 529 U.S. at 451-53.

In addition, a "*constitutional* right to effective assistance must be the predicate to any such claim" to excuse default.  *Brown v. Watters*, 599 F.3d 602, 609 (7th Cir. 2010) (emphasis in original); see also *Coleman*, 501 U.S. at 755 ("We reiterate that counsel's ineffectiveness will

constitute cause only if it is an independent constitutional violation."). Thus, post-conviction counsel's conduct cannot constitute cause. *Coleman*, 501 U.S. at 753-54; see also 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). And "'a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals.'" *Anderson v. Cowan*, 227 F.3d 893, 901 (7th Cir. 2000) (quoting *Wainwright v. Torna*, 455 U.S. 586, 587 (1982)). Therefore, counsel's failure to raise claims in a discretionary PLA to the Illinois Supreme Court or in post-conviction proceedings in the state appellate court or the Illinois Supreme Court cannot constitute cause to excuse his default. *Coleman*, 501 U.S. at 753-54; *Anderson*, 227 F.3d at 901. Here, Petitioner failed to raise his claims in discretionary PLAs and in post-conviction proceedings. He had no right to counsel at these junctures, and any alleged ineffective assistance of counsel therefore cannot constitute cause to excuse his default.

The Court also must determine whether any corrective processes remain available under Illinois law to remedy any of Petitioner's potential defaults. As noted above, Petitioner already pursued certain of his claims in one round of post-conviction proceedings. Therefore, in order to return to Illinois courts for consideration of any unexhausted claims, Petitioner would be required to file a second petition for post-conviction relief, which would require leave of court. See 725 ILCS § 5/122-1(f) ("One petition may be filed by a petitioner * * * without leave of court"). Leave of court to file a successive post-conviction petition with an additional claim or claims is granted "only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." *Id.* Illinois law specifies the following regarding the cause and prejudice standard: "(1) a prisoner

shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* Moreover, a separate provision in the Illinois post-conviction act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS § 5/122-3. The disposition of an initial post-conviction petition thus has preclusive effect with respect to all claims that were raised or could have been raised in that petition. See *People v. Orange*, 749 N.E.2d 932, 939 (Ill. 2001).

The Court does not believe that Petitioner could overcome the preclusive effect of his direct appeal and post-conviction petitions in state court. Because Petitioner has not identified "an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceedings," the Court concludes that the Illinois courts would find that Petitioner has waived his right to bring any additional claims. See *People v. Simmons*, 383 Ill. App. 3d 599, 605 (1st Dist. 2009).

Moreover, consideration of how Illinois courts might have treated Petitioner's unexhausted claims in a successive post-conviction petition is unnecessary for this Court's review, because the statute of limitations is fatal to Petitioner's ability to return to state court for further proceedings. Illinois's post-conviction act specifies:

> * * * * If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.

725 ILCS § 5/122-1(c). The six-month period provided by the Illinois statute lapsed long ago, and Petitioner has not alleged "facts showing that the delay" in raising new allegations with

respect to her claims "was not due to his * * * culpable negligence." *Id*. Therefore, Petitioner is barred from further proceedings on limitations grounds in the Illinois courts.

## B. Federal Habeas Relief -- Claim Four

If the district court finds that a petitioner was in custody when he filed his appeal, that he exhausted his remedies at the state level, and that his claim was not procedurally defaulted, the court then considers the merits of the petition. A petitioner can challenge a state proceeding by showing that it was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or that it was "based on an unreasonable determination of the facts." 28 U.S.C. §2254(d)(1-2) (2000) (as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)). Respondent concedes that Petitioner preserved for habeas review his contention that his counsel was ineffective for failing to use peremptory challenges on two jurors—one whose brother had been killed 30 years prior during a robbery and one who stated that she would accord testimony of police officers greater weight than that of ordinary citizens.

A state proceeding is "contrary to" clearly established federal law "if [it] arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law; [or] if the state [proceeding] confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the United States Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

A state proceeding constitutes an "unreasonable application" of clearly established federal law if the state proceeding identified the correct legal rule but unreasonably applied the

controlling law to the facts of the case. *Williams*, 529 U.S. at 407. Notably, "an unreasonable application of federal law is different from an *incorrect* application of federal law," (*id.* at 410 (emphasis in original)); an "unreasonable" application requires that a state proceeding rest "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). "This is a difficult to meet * * * and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotations and citations omitted); see also *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) ("This is a difficult standard [for habeas petitioners] to meet; 'unreasonable' means 'something like lying well outside the boundaries of permissible differences of opinion.'") (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). "The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case." *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) (internal quotation marks omitted). Review under section 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim." *Pinholster*, 131 S. Ct. at 1399.

With respect to section 2254(d)(2), AEDPA requires this Court to respect the state appellate court's factual determinations: "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). The Supreme Court has emphasized that an "attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for

granting a writ of habeas corpus." *Rice v. Collins*, 546 U.S. 333, 342 (2006). To prevail, a petitioner must offer clear and convincing evidence that the state appellate court's factual determination was wrong. See 28 U.S.C. § 2254(e)(1); *Montgomery v. Uchtman*, 426 F.3d 905, 912 (7th Cir. 2005).

To succeed on an ineffective assistance claim, Petitioner must prove both that (1) his counsel's performance fell below "an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Regarding the first prong, the "review of the attorney's performance is 'highly deferential' and 'reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007) (quoting *Strickland*, 466 U.S. at 689). "For the second element, defendant must show that 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* at 434 (quoting *Strickland*, 466 U.S. at 687). The standards created by *Strickland* and § 2254 are both highly deferential * * * and when the two apply in tandem, review is doubly so." *Richter*, 131 S. Ct. at 788 (internal quotation marks omitted); see also *Pinholster*, 131 S. Ct. at 1408 ("reiterat[ing] that surmounting Strickland's high bar is never an easy task" and that the "Strickland standard must be applied with scrupulous care") (internal quotation marks omitted).

Courts generally defer to counsel's strategy in deciding when to exercise peremptory challenges and assessing bias. For instance, in *United States v. Lathrop*, 634 F.3d 931, 936 (7th Cir. 2011), an arson case, counsel did not seek a further assurance of impartiality from a juror whose brother worked for the insurer of the destroyed sports bar. Instead, counsel decided to keep juror on without further questioning, as counsel thought juror was an avid sports fan who

might sympathize with the bar-owner defendant and counsel feared further questioning would reveal to the government his preference for that juror. *Id.* at 938. The court found that the conduct was a reasonable strategy and not deficient performance. See also *Cage v. McCaughtry*, 305 F.3d 625. 626-27 (7th Cir. 2002) (concluding that the petitioner had not been denied his right to an impartial jury when a juror who had said he may have read about the case in the newspaper and would "try" to be impartial was seated). Additionally, the Seventh Circuit has noted that there "is nothing suspicious about a lawyer's refusing to strike a prospective juror for cause," because the "lawyer might feel that on balance the juror was more likely to vote for than against his client." *Id.* The only question is "whether there is fair support in the record for the state courts' conclusion that the jurors here would be impartial." *Patton v. Yount*, 467 U.S. 1025, 1038-39 (1984) (denying habeas relief for counsel's decision not to strike jurors for cause, even though their testimony was "ambiguous and at times contradictory. This is not unusual on voir dire examination."). Appraisal of impartiality "is ordinarily influenced by a host of factors impossible to capture fully in the record — among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension." *Skilling v. United States*, 130 S. Ct. 2896, 2918 (2010).

"No one knows in advance how a potential juror will react to the evidence, or how the jurors will interact with each other in the jury room. Even experienced advocates find predictions difficult." *U.S. v. Boyd,* 86 F.3d 719, 724 (7th Cir. 1996) (improper exercise of peremptory challenges by the defense does not entitle defendant to a new trial where the challenge does not rise to the level of ineffective assistance of counsel). In fact, "[t]he best available study concludes that both prosecutors and defense counsel, in exercising peremptory challenges, are as likely to remove from the jury persons who favor their cause as

persons who vote against it." *Id.* Moreover, nothing prevents jurors who have the characteristics about which Petitioner complains from serving on juries. See *United States v. Fulks*, 454 F.3d 410, 432 (4th Cir. 2006) ("there is no per se rule requiring the exclusion of a juror whose close relative was a victim of a crime similar to that with which a defendant is being tried"); *United States v. Duncan*, 191 F.3d 569, 574 (5th Cir. 1999) (affirming trial court's refusal to strike juror who initially indicated she would weigh testimony of officer more than ordinary citizen after juror affirmed she would be fair and could reject testimony of law enforcement witness if it lacked credibility). Here, although both Katz and Staple admitted that they might have a difficult time with either the subject matter of the trial or crediting an officer's testimony over another's, they both stated that they could be impartial. In this case, the state court correctly articulated the *Strickland* standard and then found that Petitioner had failed to present evidence that rebutted the presumption that counsel's actions were sound trial strategy. Counsel clearly was aware of the issues, having moved to strike for cause, but decided not to use peremptory challenges, perhaps because both eventually maintained that they could be impartial and other jurors were more problematic from the defense perspective. The Court concludes that the state appellate court reasonably found that Petitioner had not demonstrated deficient performance.

The state appellate court further found that Petitioner had not demonstrated prejudice. The court correctly stated that Petitioner had to demonstrate a reasonable probability of a different outcome had counsel not performed deficiently. See also *United States v. Boyd*, 86 F.3d 719, 722 (7th Cir. 1996) (no prejudice for improper use of peremptory challenge because no evidence it "produced a jury that was likely to convict an innocent person, or even a jury more likely to convict a guilty one"). The court stated that "an equivocal response by a prospective juror" during voir dire cannot show bias "where the prospective juror later states that he will try

to disregard his bias."  The state court found no evidence of bias, as both jurors affirmatively stated they would follow the law.  Indeed, the juror whose brother had been killed in a burglary made clear that, although it would be difficult for her to sit on the jury, she would be objective and impartial.  And the juror who initially stated she would credit law enforcement testimony over that of an ordinary citizen was rehabilitated when she affirmed that she would try to give equal weight to other witnesses and would follow the law.  Further, Petitioner has not identified any issue in which the testimony of police officers was contradicted by testimony of ordinary citizens, so there was no occasion for that alleged bias to manifest itself. *Cf. United States v. Gelb*, 881 F.2d 1155, 1165 (2d Cir. 1989) (failure to question prospective jurors as to whether they would be unduly influenced by law enforcement testimony was harmless because, among other reasons, the testimony of officials was not disputed).

Finally, the state court held that Petitioner could not show prejudice because the evidence against him was overwhelming.  At trial, the State presented:  (i) three eyewitnesses, two who saw Petitioner shoot the victim and another who saw the robbery and heard gunshots as she walked away; (ii) Petitioner's voluntary, handwritten statement to police admitting that he shot the victim in an attempt to rob him; and (iii) forensic evidence corroborating the confession and eyewitness testimony.  Thus, there was no reasonable probability of a different outcome had counsel used peremptory challenges on the two jurors at issue.  In sum, the state court reasonably held that Petitioner had not demonstrated deficient performance or prejudice, and those holdings were well-supported by the facts and the law.

## III.    Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant."  Accordingly, the Court must determine whether to grant Petitioner Thomas a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller–El v. Cockrell,* 537 U.S. 322, 335 (2003); *Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009).  A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right.  *Miller–El,* 537 U.S. at 336; *Evans v. Circuit Court of Cook County, Ill.,* 569 F.3d 665, 667 (7th Cir. 2009).  Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller–El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).  And in cases where a district court denies a habeas claim on procedural grounds, the habeas court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  See *Slack,* 529 U.S. at 485.

The Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, nor would reasonable jurists differ on whether the majority of his claims are procedurally defaulted.  Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## IV.  Conclusion

For the reasons stated above, Petitioner Thomas's petition for writ of habeas corpus [1] is respectfully denied.

Dated: May 22, 2013

_____
　　　　　　Robert M. Dow, Jr.
　　　　　　United States District Judge